EDMUND G. BROWN JR.
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General
KYLE A. LEWIS
Deputy Attorney General
State Bar No. 201041
   455 Golden Gate Avenue, Suite 11000
   San Francisco, CA  94102-7004
   Telephone:  (415) 703-5500
   Fax:  (415) 703-5843
   E-mail:  Kyle.Lewis@doj.ca.gov

*Attorneys for Defendants*
*Rodriguez, Mora, Ruelas, Atchley, Celaya, Ponder,*
*and Evans*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **VICTOR ARTHUR ROLDAN,**<br><br>                              Plaintiff,<br><br>               v.<br><br>**CORRECTIONAL OFFICER J. RODRIGUEZ, et al.,**<br><br>                              Defendants. | C 09-2898 RMW (PR)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

# TABLE OF CONTENTS

**Page**

Memorandum of Points and Authorities ........................................................................................ 1

Introduction ................................................................................................................................... 1

Issues Presented ............................................................................................................................ 2

Statement of the Case.................................................................................................................... 3

Statement of Facts ........................................................................................................................ 4

      A.     Plaintiff's allegations. ........................................................................................ 4

      B.     Defendant's facts................................................................................................ 4

Legal Standard for Summary Judgment........................................................................................ 9

Argument .................................................................................................................................... 10

    I.     Defendants did not violate Plaintiff's Eighth Amendment rights because force was appropriately applied to obtain Plaintiff's compliance with staff orders............................................................................................................................ 10

    II.    Plaintiff cannot demonstrate that Defendants were deliberately indifferent to his safety and medical needs............................................................................. 12

      A.     Defendants were not deliberately indifferent to Plaintiff's medical needs.................................................................................................................... 13

      B.     Plaintiff's injuries, if any, are de minimis......................................................... 14

    III.   Plaintiff has failed to allege that Defendants Evans and Ponder are liable based on the theory of supervisor liability. .......................................................... 15

    IV.   Defendants are entitled to qualified immunity..................................................... 17

      A.     The qualified immunity standard. ..................................................................... 17

      B.     Because no constitutional right was violated, Defendants are entitled to qualified immunity under the first part of saucier................... 18

      C.     Because it would not have been clear to a reasonable official that using force to gain Plaintiff's compliance after he repeatedly refused orders was unlawful, Defendants are entitled to qualified immunity under the second part of *Saucier*. ........................................... 18

Conclusion .................................................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anderson v. Creighton*
  483 U.S. 635 (1987)..............................................................................................17

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986)...........................................................................................9, 10

*Bell v. Wolfish*
  441 U.S. 520 (1979).............................................................................................11

*Broughton v. Cutter*
  622 F.2d 458 (9th Cir. 1980)...............................................................................13

*Burns v. Reed*
  500 U.S. 478 (1991).............................................................................................17

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986)...............................................................................................9

*Clement v. Gomez*
  298 F.3d 898 (9th Cir. 2002).................................................................................11

*Cooper v. Casey*
  97 F.3d 914 (7th Cir. 1996)..................................................................................14

*Davis v. Jones*, 936 F.2d 971, 972 (7th Cir.1991) ....................................................14

*Estelle v. Gamble*
  429 U.S. 97 (1976).........................................................................................13, 14

*Farmer v. Brennan*
  511 U.S. 825 (1994).......................................................................................12, 13

*Hallett v. Morgan*
  296 F.3d 732 (9th Cir.2002).................................................................................12

*Hamilton v. Endell*
  981 F.2d 1062 (9th Cir.1992)...............................................................................15

*Harlow v. Fitzgerald*
  457 U.S. 800 (1982).............................................................................................17

*Hudson v. McMillian*
  503 U.S. 1 (1992).............................................................................10, 11, 12, 14

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Jackson v. McIntosh*
   90 F.3d 330 (9th Cir. 1996)................................................................. 13, 14

*Jeffers v. Gomez*
   267 F.3d 895 (9th Cir. 2001)................................................................. 11

*Jones v. Williams*
   297 F.3d 930 (9th Cir. 2002)................................................................. 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
   475 U.S. 574 (1986)................................................................. 10

*McGuckin v. Smith*
   974 F.2d 1050 (9th Cir.1992)................................................................. 13

*Monell v. Department of Social Services*
   436 U.S. 658 (1978)................................................................. 15

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*
   210 F.3d 1099 (9th Cir. 2000)................................................................. 9

*Palmer v. Sanderson*
   9 F.3d 1433 (9th Cir. 1993)................................................................. 15

*Parks School of Bus., Inc. v. Symington*
   51 F.3d 1480 (9th Cir. 1995)................................................................. 16

*Redman v. County of San Diego*
   942 F.2d 1435 (9th Cir. 1991)................................................................. 17

*Rhodes v. Chapman*
   452 U.S. 337 (1981)................................................................. 12

*Richards v. Nielsen Freight Lines*
   602 F. Supp. 1224 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987)................................................................. 10

*Sanchez v. Vild*
   891 F.2d 240 (9th Cir. 1989)................................................................. 13

*Sanders v. Kennedy*
   794 F.2d 478 (9th Cir. 1986)................................................................. 16

*Saucier v. Katz*
   533 U.S. 194 (2001)................................................................. 17, 18, 19

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Shapely v. Nevada Bd. of State Prison Comm'rs*
766 F.2d 404 (9th Cir.1985).................................................................13

*Spain v. Procunier*
600 F.2d 189 (9th Cir. 1979)..............................................................11

*Taylor v. List*
880 F.2d 1040 (9th Cir.1989)..............................................................15

*Toguchi v. Chung*
391 F.3d 1051 (9th Cir.2004).............................................................12

*Watkins v. City of Oakland*
145 F.3d 1087 (9th Cir. 1998)...........................................................16

*Whitley v. Albers*
475 U.S. 312 (1986)...........................................................................10

*WMX Techs., Inc. v. Miller*
104 F.3d 1133 (9th Cir.1997) (en banc).............................................13

**STATUTES**

United States Code, Title 28 § 1915A .....................................................3

United States Code, Title 42 § 1983 ...................................................3, 15

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Eighth Amendment ......................................................................passim

**COURT RULES**

Federal Rule of Civil Procedure
12(b)(6) ........................................................................................1, 16, 17
rule 12(b)(6) ............................................................................................3
rule 56.....................................................................................................1
rule 56(c) ................................................................................................9
rule 56(e)(1) .........................................................................................10
rule 56(e)(2) .........................................................................................10

iv

TO PRO SE PLAINTIFF VICTOR ROLDAN:

PLEASE TAKE NOTICE that Defendants Rodriguez, Mora, Ruelas, Atchley, Celaya, Ponder, and Evans[1] (Defendants) move, under Federal Rule of Civil Procedure 56, for summary judgment in this action on the grounds that there is no genuine issue of material fact for trial and Defendants are entitled to judgment as a matter of law. Specifically, there is no genuine issue of material fact concerning Plaintiff Victor Roldan's allegations that Defendants subjected him to excessive force in violation of the Eighth Amendment, or that Defendants were deliberately indifferent to Plaintiff's safety and medical needs in violation of the Eighth Amendment. Furthermore, Defendants are entitled to qualified immunity, as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

PLEASE TAKE FURTHER NOTICE THAT that Defendants move, under Federal Rule of Civil Procedure 12(b)(6), to dismiss Defendants Ponder and Evans on the grounds that Plaintiff fails to state a claim against these supervisory Defendants.

This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities, the declarations of Kyle A. Lewis, J. Celaya, and M. Atchley and the attached exhibits, the proposed order, the pleadings and records on file in this case, and any other matters properly before this Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Victor Roldan alleges that his constitutional rights were violated on March 19, 2007, when Salinas Valley State Prison staff subjected him to excessive force and were deliberately indifferent to his serious medical needs. Plaintiff's excessive force claim fails because Defendants only used force to gain Plaintiff's compliance with lawful orders before a unannounced cell search. The force used was clearly warranted in response to Plaintiff's repeated

---

[1] Plaintiff has not served Defendants P. Gross or R. Watters, and the Office of the Attorney General is not appearing on behalf of those Defendants.

1

refusal to comply with staff orders, the amount used was reasonably related to the need, and Plaintiff suffered minimal, if any, injury. Plaintiff's deliberate indifference claim fails because he cannot show that Defendants were deliberately indifferent to his allegedly serious medical needs following the alleged use of force, and Plaintiff did not suffer any serious medical harm. Even viewing the facts regarding these claims in Plaintiff's favor, there are no material disputed issues of fact.

Defendants are also entitled to qualified immunity in this case. At the time of the incident, it was not clearly established that Defendants were prohibited from using force to obtain Plaintiffs' compliance with lawful orders after his repeated refusals to halt his activities inside his cell as the search was initiated, namely, flushing possible indicia of criminal and gang activity down his toilet. Lastly, Plaintiff failed to sufficiently allege claims against certain supervisory Defendants in the suit, and those Defendants must be dismissed.

## ISSUES PRESENTED

1.  Using force against an inmate "maliciously and sadistically to cause harm" violates the Eighth Amendment's prohibition against cruel and unusual punishment. At the beginning of an unannounced cell search, Plaintiff began flushing items down his toilet and refused orders from correctional staff to cease his activities, thus requiring Defendants to disperse oleoresin capsicum pepper spray at Plaintiff to gain his compliance with their orders. Should Plaintiff's excessive force be dismissed where appropriate force was used to gain compliance with staff orders with little or no injury to Plaintiff?

2.  Deliberate indifference to an inmate's medical needs may arise when a correctional official intentionally denies or delays access to medical care or intentionally interferes with medical treatment. Defendants followed established use of force policies and procedures for deploying pepper spray at Plaintiff, and then promptly took measures to ensure Plaintiff's health and safety. Shortly after Plaintiff's exposure to pepper spray, Defendants decontaminated him, medically evaluated his condition, and returned him to custody after the required medical clearance. Is summary judgment proper when Defendants did not act with deliberate indifference to Plaintiffs medical needs?

2

3.     Liability for a violation of Plaintiff's civil rights only attaches to supervisors if they personally participated in the constitutional violation or had knowledge that their subordinates were violating an inmate's constitutional rights and did nothing to prevent it. Plaintiff alleges that certain supervisory Defendants condoned the alleged constitutional violations being committed by their subordinates, but provides no supporting evidence or causal link. Where Plaintiff failed to sufficiently plead a claim based on a theory of supervisor liability, should certain Defendants not be held liable and dismissed from this case under Rule 12(b)(6) of the Federal Rules of Civil Procedure?

4.     Qualified immunity protects state actors from liability for civil damages when their conduct does not violate clearly defined statutory or constitutional rights of which a reasonable person would have known. Defendants followed the established use of force policy by dispersing pepper spray into Plaintiffs' cell after he and his cell mate refused repeated staff orders, thus affecting institution operations and constituting a safety risk. Are Defendants entitled to qualified immunity where they followed clearly defined prison procedures for the employment and use pepper spray?

## STATEMENT OF THE CASE

On June 29, 2009, Plaintiff filed his complaint under 42 U.S.C. § 1983, alleging various violations of his civil rights stemming from an incident that occurred on March 19, 2007, at Salinas Valley State Prison. (Pl.'s Compl. at 3A, Court Docket (CD) #1.) On December 8, 2009, the Court screened Plaintiff's complaint under 28 U.S.C. § 1915A, finding cognizable claims of excessive force and deliberate indifference to medical needs under the Eighth Amendment arising from Defendants' alleged actions, and ordered service on eight Defendants. (December 8, 2009 Order of Service at 3, CD #4.)

Defendants now move for summary judgment on Plaintiffs' excessive force and deliberate indifference claims on the grounds that no triable issue of fact exists and Defendants are entitled to judgment as a matter of law. Defendants also move to establish their qualified immunity, and to dismiss certain supervisory Defendants on the grounds that Plaintiff has failed to sufficiently plead a cause of action against them.

3

## STATEMENT OF FACTS

1.     Plaintiff is an inmate currently in the custody of the California Department of Corrections and Rehabilitation.  On March 19, 2007, Plaintiff was incarcerated at Salinas Valley State Prison.  (CD #1 at 1-3.)

### A.  Plaintiff's Allegations.

2.     Plaintiff alleges that on March 19, 2007, he was selectively targeted by Defendants on the basis of his race, which lead to his assault by correctional staff.  (CD #1 at 3A; CD #4 at 2.)

3.     Plaintiff alleges that on March 19, 2007, Defendants Rodriguez and Mora used excessive force when they sprayed him with chemical agents in his cell as he was flushing the toilet.  (CD #1 at 3A; CD #4 at 2.)

4.     Plaintiff alleges that the force by used Defendants was not for the purpose of stopping Plaintiff from flushing the toilet or to subdue Plaintiff, but rather to maliciously assault him.  (CD #1 at 3B.)

5.     Plaintiff alleges that Defendants Ruelas and Atchley participated in this use of excessive force on Plaintiff by observing it but doing nothing to prevent the alleged excessive force from occurring or continuing.  (CD #1 at 3B; CD #4 at 2.)

6.     Plaintiff alleges that Defendant Celaya ordered the specific targeting of Plaintiff. (CD #1 at 3B; CD #4 at 2.)

7.     Plaintiff alleges that Defendants Ponder and Evans condoned these actions against Plaintiff and did nothing to prevent them.  (CD #1 at 3B; CD #4 at 2.)

8.     Plaintiff alleges that Defendants Ruelas, Celaya, Atchley, and Gross intentionally denied him proper medical care following his exposure to pepper spray, including the denial of decontamination, fresh clothing, and his asthma inhaler.  (CD #1 at 3C; CD #4 at 2.)

### B.  Defendant's Facts.

9.     Salinas Valley has a uniform policy governing the use of force that includes an investigative policy and a disciplinary policy.  (Decl. of J. Celaya Supp. Defs.' Mot. Summ. J. & Mot. Dismiss (Decl. Celaya) ¶ 1; Decl. of M. Atchley Supp. Defs.' Mot. Summ. J. & Mot. Dismiss (Decl. Atchley) ¶ 3.)  These policies define staff responsibilities and limitations

4

concerning the use of force while still allowing discretion in the appropriate application of force. (*Id.*) Force is only used when reasonably necessary to subdue an attacker, overcome resistance, effect custody, or to gain compliance with an order. (*Id.*)

10.    On the morning of March 19, 2007, Defendant Celaya ordered the search of a cell occupied by Plaintiff Victor Roldan, and his cellmate Inmate G. Flores, based on information identifying them as known gang members. (Decl. Celaya ¶ 3; Decl. Atchley ¶ 4; Decl. of K. Lewis Supp. Defs.' Mot. Summ. J. & Mot. Dismiss (Decl. Lewis) Ex. B at OAG-002, Ex. C at OAG-022.)

11.    At that time, Salinas Valley was experiencing a recurring pattern of gang-related violence between Caucasian and Southern Hispanic inmates. (Decl. Celaya ¶ 3; Decl. Atchley ¶ 4; Decl. Lewis Ex. B at OAG-002.) In order to control and eliminate this violence, correctional officers were searching various cells for gang paraphernalia, including literature and communications, and other contraband items such as weapons. (Decl. Celaya ¶ 3; Decl. Atchley ¶ 4; Decl. Lewis Ex. B at OAG-002, Ex. C at OAG-022, Ex D at OAG-026.) These cell searches were performed without notice so that inmates would not have the opportunity to hide or destroy items before cells were searched.  (Decl. Celaya ¶ 3.)

12.    At approximately 0930 on March 19, 2007, Defendant M. Atchley, one of the Facility C Sergeants tasked with cell searches, approached the cell occupied by Plaintiff and Inmate Flores, accompanied by Correctional Officers J. Rodriguez, R. Watters, and J. Mora, with the intent of searching the cell for contraband, weapons, or other items of gang activity. (Decl. Celaya ¶ 4; Decl. Atchley ¶ 5; Decl. Lewis Ex. B at OAG-002, -004, -006, -008, Ex C at OAG-022, Ex D at 026.)

13.    As the officers approached the cell, Defendant Atchley observed Plaintiff move quickly towards the toilet in the cell. (Decl. Celaya ¶ 4; Decl. Atchley ¶ 5; Decl. Lewis Ex. B at OAG-002, Ex C at OAG-022, Ex D at 026.) Defendant Watters unlocked and opened the food port in the cell door as Defendant Rodriguez ordered Plaintiff and Inmate Flores to move to a prone position in the cell. (*Id.*) At this time, Defendant Atchley observed Plaintiff throwing small pieces of rolled, white paper into the toilet. (*Id.*, Decl. Lewis Ex. B at OAG-004, -006.)

5

14. Based on his experience, Defendant Atchley believed these items could have been indicative of gang and/or criminal activity as they may have contained written communications or concealed contraband, such as illicit drugs. (Decl. Celaya ¶ 4; Decl. Atchley ¶ 5.) Meanwhile, both inmates refused staff orders to prone out, and Plaintiff continued flushing items in the toilet. (Decl. Celaya ¶ 5; Decl. Atchley ¶ 5; Decl. Lewis Ex. B at OAG-002, -004, -006, -008, Ex C at OAG-022, Ex D at 026.)

15. Correctional staff ordered Plaintiff to stop throwing items in the toilet, but Plaintiff refused. (Decl. Celaya ¶ 5; Decl. Atchley ¶ 6; Decl. Lewis Ex. B at OAG-002, -004, -006, -008, Ex C at OAG-022, Ex D at 026.) Because Plaintiff was refusing to comply with staff orders and appeared to be destroying possible evidence of illegal activity, Defendant Rodriguez utilized his MK-9 chemical agent sidearm canister to discharge oleoresin capsicum pepper spray into the cell through the cell door food port at Plaintiff's upper body and facial area. (Decl. Celaya ¶ 5; Decl. Atchley ¶ 6; Decl. Lewis Ex. B at OAG-002, -004, -006, -008, Ex C at OAG-022, Ex D at 027.)

16. The purpose of this use of force was to gain Plaintiff's compliance with orders and to prevent the destruction of evidence or contraband items, and was consistent with CDCR and Salinas Valley policies and procedures regarding the use of force. (Decl. Celaya ¶ 5; Decl. Atchley ¶ 6.)

17. Despite the deployment of pepper spray and staff's repeated orders to stop his activities and move into a prone position inside the cell, Plaintiff retrieved additional items and threw them into the toilet. (Decl. Celaya ¶ 6; Decl. Atchley ¶ 7; Decl. Lewis Ex. B at OAG-002, -004, -006, Ex C at OAG-022, Ex D at 027.) Defendant Rodriguez then discharged another burst of pepper spray toward Plaintiff's upper body and facial area in order to gain his compliance with staff orders. (Decl. Celaya ¶ 6; Decl. Atchley ¶ 7; Decl. Lewis Ex. B at OAG-003, -005, -006, -008, Ex C at OAG-022, Ex D at 027.)

18. At this time, staff observed Plaintiff's cellmate, Inmate Flores, grab a cup and throw an unknown brown liquid at the correctional officers through the cell door's open food port, striking Defendant Atchley and Defendant Rodriguez. (Decl. Celaya ¶ 6; Decl. Atchley ¶ 7; Decl. Lewis Ex. B at OAG-003, -005, -007, -008, Ex C at OAG-022, Ex D at 027.) Assaults of this

6

type by are known as "gassings," wherein inmates will throw various bodily secretions and other fluids at staff.  (Decl. Celaya ¶ 6; Decl. Atchley ¶ 7.)

19.    As Defendant Rodriguez stepped away from the food port after being struck with the unknown liquid, Officer Mora utilized his sidearm canister to discharge a burst of pepper spray at Inmate Flores through the open food port in order to prevent further assault on staff and to obtain the inmates' compliance with orders. (Decl. Celaya ¶ 7; Decl. Atchley ¶ 8; Decl. Lewis Ex. B at OAG-003, -005, -007, -008, Ex C at OAG-022, Ex D at 027.)  Officer Mora then ordered the inmates to move into a prone position, and the inmates initially complied with this order.  (*Id.*)

20.    Defendant Atchley then ordered Inmate Flores to rise and move back to the food port in the cell door so that he could be placed in restraints.  (Decl. Celaya ¶ 7; Decl. Atchley ¶ 9; Decl. Lewis Ex. B at OAG-003, -005, -007, Ex C at OAG-022, Ex D at 027.)  As Inmate Flores rose from the prone position, he suddenly moved to the door and placed his back against the food port. (*Id.*)

21.    As Inmate Flores was doing this, Plaintiff jumped to his feet, grabbed an unknown object from a shelf in the cell, and threw it in the toilet. (Decl. Celaya ¶ 7; Decl. Atchley ¶ 9; Decl. Lewis Ex. B at OAG-003, -005, -007, Ex C at OAG-022, Ex D at 027.)  Defendant Atchley then gave the inmates several orders to cease their actions and assume a prone position on the floor of the cell, but they did not comply. (Decl. Atchley ¶ 9; Decl. Lewis Ex. B at OAG-003, Ex D at OAG-027.)

22.    Defendant Rodriguez then discharged a burst of pepper spray at Plaintiff's upper body and facial area in order to gain his compliance with staff orders, but Plaintiff did not comply. (Decl. Celaya ¶ 8; Decl. Atchley ¶ 10; Decl. Lewis Ex. B at OAG-003, -005, -007, Ex C at OAG-022, Ex D at 027.)  While this was occurring, Inmate Flores attempted to use his body to block the pepper spray from entering the cell through the food port. (Decl. Celaya ¶ 7; Decl. Atchley ¶ 10; Decl. Lewis Ex. B at OAG-003, -005, -007, Ex C at OAG-022, Ex D at 027.)

23.    Defendant Rodriguez ordered both inmates to stop their activities and move to a prone position, but neither complied.  The Defendant then sprayed both inmates with pepper in

7

the upper body and facial area to gain their compliance. (Decl. Celaya ¶ 8; Decl. Atchley ¶ 10; Decl. Lewis Ex. B at OAG-003, -005, -007, Ex C at OAG-022, Ex D at 027.)

24.    Finally, Inmate Flores moved away from the door and toward the back of the cell, where he assumed a prone position. (Decl. Celaya ¶ 8; Decl. Atchley ¶ 10; Decl. Lewis Ex. B at OAG-003, -005, -007, Ex C at OAG-022, Ex D at 027.) At this time, Plaintiff also complied with staff orders to lie prone on the cell floor. (*Id.*) Thereafter, both inmates were handcuffed via the food port and removed from the cell by staff. (*Id.*)

25.    Following the incident, Defendants Mora and Watters escorted Plaintiff to the Facility C Health Services Annex and placed him in holding cell #5, where Plaintiff was decontaminated with fresh air and awaited evaluation by medical staff. (Decl. Celaya ¶ 9; Decl. Atchley ¶ 11; Decl. Lewis Ex. B at OAG-003, -007, 009, Ex C at OAG-022.)

26.    Defendant Atchley ordered Defendant J. Ruelas, a correctional officer in the building who had responded to the personal alarm, to escort Inmate Flores to the Health Services Annex. (Decl. Celaya ¶ 9; Decl. Atchley ¶ 11; Decl. Lewis Ex. B at OAG-003, -010, -011, Ex C at OAG-022.) Defendant Ruelas escorted Inmate Flores to the Annex and placed him in holding cell #4, where he was decontaminated and awaited medical evaluation. (Decl. Celaya ¶ 9; Decl. Atchley ¶ 11; Decl. Lewis Ex. B at OAG-003, -011, Ex C at OAG-022.)

27.    At approximately 1000, Registered Nurse P. Gross evaluated Plaintiff and Inmate Flores, found no injuries to either inmate, confirmed that both inmates were decontaminated, and released them to custody staff for rehousing. (Decl. Celaya ¶ 9; Decl. Atchley ¶ 11; Decl. Lewis Ex. B at OAG-003, -017, -018, Ex C at OAG-022.) Records of the medical evaluation contain no complaints by Plaintiff that he had difficult breathing, was not properly decontaminated, or was denied any form of medical treatment. (Decl. Lewis Ex. B at OAG-017.)

28.    Following the incident, Plaintiff received a Rules Violation Report for, and was later found guilty of, "Willfully Resisting Staff." (Decl. Celaya ¶ 10; Decl. Atchley ¶ 12; Decl. Lewis Ex. B at OAG-003, Ex C at OAG-022, Ex D at 027.)

29.   Inmate Flores received a Rules Violation Report for "Battery on a Peace Officer," and the matter was referred to the Monterey County District Attorney's Office for prosecution. (Decl. Celaya ¶ 10; Decl. Atchley ¶ 12; Decl. Lewis Ex. B at OAG-003, Ex C at OAG-022.)

30.   On March 20, 2007, Defendant Celaya drafted a Crime/Incident Report Part A, Form CDCR 837-A1, regarding the events in Facility C involving Plaintiff and Inmate Flores the previous day. (Decl. Celaya ¶ 11; Decl. Lewis Ex. C at OAG-022.)  In evaluating the incident and the events leading to the use of force, Defendant Celaya determined that the force used by correctional staff, including the use of pepper spray, was necessary to gain the inmates' compliance with staff orders to cease their activities inside the cell and submit to handcuffing, while also preventing further assault on staff. (Decl. Celaya ¶ 11.)  Defendant Celaya also determined that no injuries to the inmates resulted from the staff's use of force, and that the force used on March 19, 2007, was appropriate and necessary to gain compliance with lawful orders, ensure staff safety, and secure the facility, and complied with departmental policies, procedures, and training. (Decl. Celaya ¶ 11; Decl. Atchley ¶ 13.)

## LEGAL STANDARD FOR SUMMARY JUDGMENT

A court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the moving party need not disprove the other party's case. *Id.* at 323-24. Where the movant does not bear the burden of persuasion at trial, he may carry his initial burden of production by either producing evidence "negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim . . . to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

9

*Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000). When the moving party meets its initial burden, entry of summary judgment is mandated where the nonmoving party fails to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). There is no triable issue of fact unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249.

All affidavits supporting or opposing a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). All reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, inferences are not drawn out of the air, and it is Plaintiff's obligation to provide the factual predicate from which an inference can be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## ARGUMENT

I.  **DEFENDANTS DID NOT VIOLATE PLAINTIFF'S EIGHTH AMENDMENT RIGHTS BECAUSE FORCE WAS APPROPRIATELY APPLIED TO OBTAIN PLAINTIFF'S COMPLIANCE WITH STAFF ORDERS.**

When prison officials are accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The extent of injury suffered by an inmate is one of the factors to be considered in determining whether the use of force is wanton and unnecessary. *Id.* Not every touching by a

10

prison guard gives rise to a federal cause of action. *Id.* at 9-10. But guards may use force only in proportion to the need in each situation. *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979).

In determining whether the use of force was for the purpose of maintaining or restoring discipline, or instead, for the malicious and sadistic purpose of causing harm, a court may evaluate (1) the need for the application of force, (2) the relationship between that need and the amount of force used, (3) the extent of any injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. In making this evaluation, a court should give prison administrators wide-ranging deference in adopting and executing policies and practices to further institutional order and security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001). While officials are not insulated from actions taken in bad faith or for no legitimate purpose, courts should not second guess the judgment of officials who have made a considered choice. *Id.* Unless the evidence supports a reliable inference of wantonness, the case should not go to the jury. *Id.*

Plaintiff's allegation that Defendants used excessive force against him is factually unsupported. Plaintiff has presented no evidence showing that Defendants "applied the pepper spray maliciously and sadistically for the very purpose of causing harm." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). To the contrary, examining the circumstances in which pepper spray was used by Defendants demonstrates the appropriateness of their actions. *Id.*, 503 U.S. at 7. First, pepper spray was used only after Plaintiff refused to comply with Defendants' repeated demands that he cease his actions and move to a prone position. (Stmt. Facts ¶¶ 14, 15.) Given the on-going violence at Salinas Valley, correctional staff had a vital need both to conduct the search of Plaintiff's cell and ensure that inmates obeyed lawful orders. (Stmt. Facts ¶ 11.) Moreover, because Plaintiff refused to stop his activities and lie prone, officers had no lesser means of force available to obtain Plaintiff's control without further threatening or endangering staff, an especially valid concern given Inmate Flores's "gassing" assault of staff during the encounter. (Stmt. Facts ¶ 18.) Because of Plaintiff and Flores's non-compliant and assaultive actions, Defendants did not have the opportunity to temper the severity of their response before

11

deploying pepper spray. (Stmt. Facts ¶ 19.) In fact, Plaintiff's continued failure to comply with staff orders required the repeated use of force and wholly removed the staff's ability to temper the severity of their response. Nevertheless, Defendants stopped discharging pepper spray into the cell when Plaintiff and his cell mate submitted to orders. (Stmt. Facts ¶ 24.)

After Plaintiff was handcuffed and removed from the cell, he was taken to the facility's medical annex for decontamination and then examined by a prison nurse. (Stmt. Facts ¶¶ 25, 27.) This medical professional evaluated Plaintiff approximately thirty minutes after Plaintiff was exposed to pepper spray, and cleared Plaintiff to return to custody. Plaintiff did not complain of any breathing problems or similar issues during the examination, and no injuries were noted. (Stmt. Facts ¶ 27.) Any alleged injury suffered by Plaintiff as a result of the exposure to chemical spray was minimal, and Plaintiff has made no claims that he suffered lingering effects or permanent injury after the incident. (*Id.*)

Because the force used by Defendants was applied in a good-faith and appropriate effort to obtain Plaintiff's compliance with staff orders, it did not constitute a violation of the Eighth Amendment's prohibition against the use of excessive force. There can be no dispute of fact necessitating a trial on Plaintiff's Eight Amendment claims, and Defendants are entitled to summary judgment as a matter of law.

## II.   PLAINTIFF CANNOT DEMONSTRATE THAT DEFENDANTS WERE DELIBERATELY INDIFFERENT TO HIS SAFETY AND MEDICAL NEEDS.

Under the Eighth Amendment, a prison official's duty to ensure the safety of inmates extends to taking reasonable steps to avoid threats to their health. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). An inmate's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,' " and (2) "the prison official 'acted with deliberate indifference in doing so.' " *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir.2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.2002) (citation omitted)).

12

A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 834. Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir.1997) (en banc). Where an inmate alleges a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. *McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985)).

### A. Defendants Were Not Deliberately Indifferent to Plaintiff's Medical Needs.

In applying the deliberate-indifference standard, the Ninth Circuit has held that before an inmate civil rights are considered violated, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-6 (1976)). Allegations consisting of little more than differences of medical opinion regarding treatment method are "insufficient, as a matter of law to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)).

Plaintiff alleges that Defendants Watters, Ruelas, Celaya, Atchley and Gross denied Plaintiff any form of decontamination, and that Defendant Gross denied him access to his asthma inhaler. (Stmt. Facts ¶ 8.) However, Defendants removed Plaintiff from his cell and allowed him to decontaminate with fresh air immediately following his exposure to pepper spray. (Stmt. Facts ¶¶ 25, 27.) Moreover, within thirty minutes of the incident, Plaintiff was examined by medical staff. During this examination, Plaintiff did not complain of any breathing problems or asthma-related needs.[2] (Stmt. Facts ¶ 27.) Staff observed Plaintiff, noted that he was decontaminated,

---

[2] Additionally, examination of Inmate Flores's post-incident medical evaluation records casts doubt upon Plaintiff's claim of physical pain following his exposure to pepper spray. According to their respective medical reports of injury, Inmate Flores was seen by medical staff
(continued...)

13

and then returned him to custody. (*Id.*) Beyond his allegations of physical pain, Plaintiff has provided no evidence that he requested any follow-on medical care related to the pepper-spray exposure, alleged insufficient decontamination, or denial of care for his asthma condition.

In the present matter, Plaintiff has not—and cannot—set forth evidence establishing that Defendants purposefully ignored or failed to properly decontaminate him or provide medical care following his exposure to pepper spray. Plaintiff's statement that he was denied treatment is contravened by medical records and staff observations. (Stmt. Facts ¶ 27, Decl. Lewis Ex B at OAG-007, 009, 010.) Plaintiff's failure to identify any medical concern to medical providers in the time immediately following the pepper spray exposure demonstrates his lack of injury. (Stmt. Facts ¶ 27.) Plaintiff's unsupported allegation that he was denied appropriate decontamination or other medical care does not rise to the level of deliberate indifference against Defendants.

### B.   Plaintiff's Injuries, if any, Are De Minimis.

To state a violation of his Eighth Amendment rights, Plaintiff must allege that Defendants exhibited deliberate indifference to a "serious medical need." *Hudson v. McMillian*, 503 U.S. 1, 4 (1992) (citing Estelle, supra, 429 U.S. at 104). To support an alleged violation of the Constitution, "the illness or injury for which assistance is sought [must be] sufficiently serious or painful to make the refusal of assistance uncivilized." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) (citing Davis v. Jones, 936 F.2d 971, 972 (7th Cir.1991)). But all the facts here demonstrate that Plaintiff suffered de minimis injuries, if any.

Immediately after being removed from the cell and decontaminated for exposure to pepper spray, Plaintiff was examined by prison medical personnel. This evaluation revealed no injuries to Plaintiff, and Plaintiff made no mention of asthma-related complaints to staff. (Stmt. Facts ¶ 27.) Moreover, Plaintiff has alleged no lasting or lingering effect from the pepper spray exposure or alleged medical indifference by correctional staff. (CD #1 at 3C.) Plaintiff has presented no

---

(...continued)
at approximately 0950 on March 19, 2007, while Plaintiff was seen at 1000. (Decl. Lewis Ex B at OAG-017 - 018.)If Plaintiff's was in the extreme amount of pain he alleges, it appears that he did not communicate this to staff, as they would have likely examined him before Inmate Flores, who made no complaints of pain. (*Id.*)

14

evidence of new or recurrent problems associated with the pepper-spray exposure, beyond a general allegation of "physical pain" suffered because of Defendants' claimed medical indifference. (CD #1 at 3C.) In sum, there is no evidence whatsoever that Defendants' alleged actions had any serious or painful impact on Plaintiff or constituted deliberate indifference to a serious medical need. Without evidence that the alleged discomfort Plaintiff experienced on March 19, 2007, was anything more than a transitory and de minimis injury, Defendants' motion for summary judgment must be granted.

### III. PLAINTIFF HAS FAILED TO ALLEGE THAT DEFENDANTS EVANS AND PONDER ARE LIABLE BASED ON THE THEORY OF SUPERVISOR LIABILITY.

Plaintiff alleges that Defendants Ponder and Evans condoned the targeting of Plaintiff on the basis of his race, which ultimately lead to the excessive force used against him. (CD #1 at 3B; CD # 4 at 2.) Plaintiff premises these Defendants' liability on a theory of respondeat superior or vicarious liability. However, it is well-established that neither of these theories is available in a 42 U.S.C. § 1983 action. *Monell v. Department of Social Services*, 436 U.S. 658, 692 (1978); *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). A supervisor, such as Defendants Ponder and Evans, can only be "liable for constitutional violations of his subordinates, if the supervisor participated in or directed the violations or knew of the violations and failed to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989); *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir.1992). Plaintiff has failed to sufficiently plead constitutional violations against these supervisory Defendants, and they should be dismissed from the suit.

Liability under a civil-rights claim only attaches to supervisors if they personally participated in the constitutional violation, or had knowledge that their subordinates were violating another's constitutional rights and did nothing to prevent it. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Thus, to bring a successful § 1983 claim against Defendants Evans (Warden of Salinas Valley) and Ponder (a Captain at Salinas Valley) (CD # 1 at 3B), Plaintiff must allege and prove that these Defendants either personally committed acts which had a direct causal connection to Plaintiff's alleged

15

constitutional violation, or that these Defendants knew of alleged constitutional violations committed by their subordinates. *Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir. 1986).

Here, however, Plaintiff failed to sufficiently allege any such wrongdoing by Defendants Evans and Ponder. Rather, Plaintiff makes only passing reference to these Defendants and the roles they allegedly played in the deprivation of his rights without providing the requisite evidentiary support to justify imposition of supervisor liability upon them. Plaintiff makes wholly unsupported allegations that "Captain Ponder and Warden Evans, as head of Salinas Valley State Prison, failed to supervise and or curtail this and like actions, allowing them to go on unchecked for more than two years with over (approximately) one hundred of these types of attacks occurred." (CD #1 at 3C.) Plaintiff further alleges that "Captain Ponder and Warden Evans created the atmosphere where such invidious targeting could go for so long unchecked and because of their deliberate indifference Petitioner was directly affected by the above described brutality." (*Id.*) These allegations fail to provide any rational bases for the imposition of supervisor liability on either Defendant for Plaintiff's alleged civil rights violations, and are an insufficient basis upon which to mount a constitutional attack.

Plaintiff also fails to make a necessary link between the Defendants' alleged wrongful conduct and the constitutional violation. See *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (causation may be established only by showing that the supervisor set in motion a series of acts by others, which the supervisor know or reasonably should have known would cause others to inflict the injury.). The proper standard for a Rule 12(b)(6) dismissal requires the courts to accept as true all material allegations in the complaint and construe the complaint in the light most favorable to the Plaintiff. *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). But it does not require a court to allow every claim brought by a plaintiff to stand when the pleading requirements are not satisfied. Even when Plaintiff's complaint is viewed in the manner most favorable to his cause, the claim against Defendants Ponder and Evans fails to sufficiently allege any constitutional deprivation caused by these supervisory officials. As stated above, Plaintiff has neither alleged nor provided any evidence indicating that Defendants Ponder and Evans had knowledge of or condoned any alleged constitutional violations being committed

16

by their subordinates, or that these Defendants' actions were causally related to those alleged violations. Because Plaintiff fails to sufficiently allege supervisor liability against these Defendants, they must be dismissed from this case under Federal Rule of Civil Procedure 12(b)(6). *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991).

## IV.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

### A.    The Qualified Immunity Standard.

Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Burns v. Reed*, 500 U.S. 478, 495 (1991).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a particular sequence of questions to be considered in determining whether qualified immunity shields government actors from liability. Under *Katz*, the Court must consider whether: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and the defendant prevails. *Id.* If, however, "a violation could be made out on a favorable view of the parties' submissions, the Court must consider whether the right was clearly established. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Moreover, the qualified immunity defense allows mistakes even if the law was clearly established. *Katz*, 533 U.S. at 205. The officer is entitled to qualified immunity if the "mistake as to what the law requires is reasonable" under the circumstances. *Id.* at 205.

//

//

17

**B.    Because No Constitutional Right Was Violated, Defendants Are Entitled to Qualified Immunity Under the First Part of *Saucier*.**

As discussed above, no constitutional violation occurred in this matter because Defendants used force in a good-faith effort to gain Plaintiff's compliance with orders to cease his activities and assume a prone position, not for the purpose of causing Plaintiff harm.  (Stmt. Facts ¶¶ 15, 17, 19, 22, 23, 24.)  As a result, Plaintiff cannot fulfill the first requirement of *Saucier*—that the facts alleged show Defendants' conduct violated Plaintiff's Eighth Amendment rights.  Accordingly, Defendants are entitled to qualified immunity.

**C.    Because It Would Not Have Been Clear to a Reasonable Official That Using Force To Gain Plaintiff's Compliance After He Repeatedly Refused Orders Was Unlawful, Defendants Are Entitled To Qualified Immunity Under the Second Part of *Saucier*.**

Assuming that Plaintiff establishes a constitutional violation by Defendants (which he cannot), the Court must then determine whether it would have been clear to reasonable officers that their conduct was unlawful in the situation confronting them.  *Saucier*, 533 U.S. at 201-02. Applying this part of the *Saucier* qualified-immunity inquiry to this case, it would not have been clear to Defendants that their use of force was an unlawful response to Plaintiff's repeated disregard for their orders.  Rather, a reasonable prison official would have believed that he was entitled to use an appropriate amount of force necessary to gain Plaintiff's compliance with lawful orders, and that using such force would not violate Plaintiff's constitutional rights.

Here, Defendants followed the Salinas Valley Use of Force Policy according to their training.  Defendants utilized pepper spray not to harm Plaintiff, but to restore order by causing Plaintiff to stop flushing items of possible contraband or evidence of illegal activity down his cell toilet.  (Stmt. Facts ¶¶ 15, 17, 21, 22.)  Prior to the use of the pepper spray, Plaintiff was explicitly instructed to stop his activities and to lie in a prone position.  (Stmt. Facts ¶¶ 13, 15.)  When he failed to comply with the initial orders of staff, pepper spray was discharged at Plaintiff to gain his compliance.  (Stmt. Facts ¶ 15.)  After the initial use of pepper spray, Plaintiff was again ordered to cease his activities, which he refused to do, causing officers to again deploy pepper spray.  (Stmt. Facts ¶¶ 17, 22.)  These repeated actions made Plaintiff plainly aware that his

18

failure to comply with the staff instructions would result in the use of chemical agents by officers. When Plaintiff continually ignored correctional staffs' commands, Defendants had no recourse but to further use pepper spray to obtain his compliance with orders. (Stmt. Facts ¶¶ 22, 23.)

Throughout the incident, Defendants followed the CDCR and Salinas Valley use of force policies and procedures. (Stmt. Facts ¶ 30.) Therefore, it would not have been clear to a reasonable official that his actions were clearly unlawful. To the contrary, following the incident, Defendants' actions were reviewed and approved by the facility lieutenant. (*Id.*) This review found that Defendants' use of force on March 19, 2007 was a lawful response to Plaintiff's actions. Because the law did not put Defendants on notice that their conduct would be clearly unlawful, they are entitled to qualified immunity. *Saucier*, 533 U.S. at 202.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

19

## CONCLUSION

Plaintiffs' allegations in this suit are unsupported by the evidence. Defendants have shown that they did not subject Plaintiff to excessive force when they used pepper spray to gain Plaintiff's compliance with lawful orders after his repeated refusal to follow staff directions. The evidence also demonstrates that Defendants were not deliberately indifferent to Plaintiff's medical needs following his exposure to pepper spray. Because there are no material facts in dispute, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim. Also, because Defendants' actions were reasonable under the circumstances, Defendants are entitled to qualified immunity. Lastly, because Plaintiff has failed to adequately state a claim of supervisor liability against Defendants Evans and Ponder, those Defendants should be dismissed from this suit.

Dated:  May 21, 2010

Respectfully Submitted,

EDMUND G. BROWN JR.
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General

KYLE A. LEWIS
Deputy Attorney General
*Attorneys for Defendants
Rodriguez, Mora, Ruelas, Atchley, Celaya,
Ponder, and Evans*

SF2010200073
40458052.doc

20

# CERTIFICATE OF SERVICE

Case Name:    **V. A. Roldan v. J. Rodriguez, et al.**          No.    **C 09-2898 RMW (PR)**

I hereby certify that on **May 21, 2010**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**DECLARATION OF J. CELAYA IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

**DECLARATION OF M. ATCHLEY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

**DECLARATION OF KYLE A. LEWIS SUPPORTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. On **May 21, 2010**, I have mailed the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

**Victor Arthur Roldan, H-05477**
**Salinas Valley State Prison**
**P.O. Box 1050**
**Soledad, CA 93960-1050**
*Pro Se*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **May 21, 2010**, at San Francisco, California.

_____
M.M. Argarin
Declarant

_____
Signature

40458085.doc