*E-FILED - 1/27/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR ARTHUR ROLDAN, ) | No. C 09-2898 RMW (PR) |
| ) | |
| Plaintiff, ) | ORDER GRANTING |
| ) | DEFENDANTS' MOTION FOR |
| vs. ) | SUMMARY JUDGMENT; |
| ) | GRANTING MOTION TO DISMISS |
| CORRECTIONAL OFFICER J. ) | |
| RODRIGUEZ, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that Salinas Valley State Prison ("SVSP") employees violated his right to be free from excessive force and were deliberately indifferent to his serious medical needs. Defendants have moved for summary judgment, arguing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Although given an opportunity, plaintiff did not file an opposition.

After a review of the record, the court concludes that plaintiff has not shown sufficient evidence that precludes summary judgment. Accordingly, the court GRANTS defendants' motion for summary judgment.

Order Granting Defendants' Motion for Summary Judgment; Granting Motion to Dismiss
P:\PRO-SE\SJ.Rmw\CR.08\Roldan898msjgrant.wpd

# BACKGROUND[1]

On March 19, 2007, defendant Celaya ordered defendant Sergeant M. Atchley to search the cell of plaintiff and his cellmate, Flores, based on information that they were known gang members. (Decl. Celaya at ¶ 3.) At that time, the prison had recently experienced several instances of gang-related violence between Caucasians and Southern Hispanic inmates. (Id.; Decl. Atchley at ¶ 4.) As a result, prison staff were searching cells periodically, without notice to inmates, in order to look for gang paraphernalia and related activity. (Decl Atchley at ¶ 4; Decl. Celaya at ¶ 3.)

At 9:30 a.m., Atchley asked defendants Rodriguez, Watters, and Mora to help him search plaintiff's cell. (Decl. Atchley at ¶ 5.) As they approached the cell, Atchley saw plaintiff "move quickly" toward the toilet in his cell. (Id.) Plaintiff alleges that he was just flushing the toilet when defendants approached. (Complaint at 3A.) Watters unlocked and opened the food port in the cell door, and Rodriguez ordered plaintiff and his cellmate, Flores, to "prone out." (Decl. Atchley at ¶ 5.) Atchley saw plaintiff throwing small pieces of paper into the toilet. (Id.) He believed them to be items of gang-related or criminal activity because they could "contain written communications or conceal contraband items." (Id.) Both inmates refused to "prone out." (Id.)

Other guards ordered plaintiff to stop throwing things into the toilet, but he refused. (Id. at ¶ 6.) Plaintiff asserts that the officers were yelling contradictory commands and sprayed him with chemicals before he had an opportunity to comply. (Complaint at 3A.) Rodriguez used his MK-9 chemical agent to discharge oleoresin capsicum pepper spray ("pepper spray") into the cell through the food port. (Decl. Atchley at 6.) The intent was to gain plaintiff's compliance and prevent destruction of the items. (Id.) Still, plaintiff was able to retrieve more items and throw them into the toilet as well. (Id. at ¶ 7.) Rodriguez sprayed him again, in an effort to get plaintiff's compliance and prevent him from throwing more stuff into the toilet. (Id.) Then, Flores grabbed a cup and threw some kind of unidentified brown liquid at the officers, hitting

---

[1] The following facts are taken in the light most favorable to plaintiff.

Order Granting Defendants' Motion for Summary Judgment; Granting Motion to Dismiss
P:\PRO-SE\SJ.Rmw\CR.08\Roldan898msjgrant.wpd     2

1  Atchley and Rodriguez. (Id.) Mora used his pepper spray and sprayed Flores. (Id. at ¶ 8.)
2  Mora ordered the inmates to prone out, and both inmates complied. (Id.) Mora ordered Flores to
3  back up to the food port for cuffing. (Id. at ¶ 9.) As Flores got up, plaintiff also got up, grabbed
4  an item from the shelf and threw it into the toilet. (Id.) Atchley ordered them to stop and lie
5  down, but neither inmate complied. (Id.) Rodriguez sprayed plaintiff in order to gain
6  compliance, but plaintiff continued to refuse. (Id. at ¶ 10.) Flores got up to try to block the
7  pepper spray. (Id.) Rodriguez ordered both inmates to lie down. (Id.) Neither complied. (Id.)
8  Rodriguez sprayed both inmates again, and they finally complied. (Id.) Both inmates were
9  handcuffed and removed from their cell. (Id.)

10 Atchley ordered Mora and Watters to take plaintiff to Health Services for
11 decontamination and a medical evaluation. (Id.) Both inmates were transported and placed in
12 holding cells pending examination. (Id. at ¶ 11; Complaint at 3C.) Plaintiff alleges that Watters,
13 Ruelas, Celaya, Atchley, and Gross denied him any form of decontamination. (Complaint at
14 3C.) Plaintiff was decontaminated at 10:00 a.m. (Decl. Atchley at ¶ 11; Decl. Lewis, Medical
15 Report.) Gross found no injuries and confirmed that plaintiff was decontaminated prior to
16 releasing him back to custody. (Decl. Atchley at ¶ 11.) Plaintiff alleges that he was denied
17 water and medical aid, and was not permitted to use his asthma inhaler. (Complaint at 3C.)
18 Plaintiff claims that Gross told him that the inhaler was not needed if plaintiff could actually
19 verbalize his wish for it. (Complaint at 3C). As a result of the incident, plaintiff received a rules
20 violation report for, and was found guilty of, willfully resisting staff. (Decl. Atchley at ¶ 12.)

## DISCUSSION

A.  Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

1    The party moving for summary judgment bears the initial burden of identifying those
2 portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine
3 issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving
4 party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no
5 reasonable trier of fact could find other than for the moving party. But on an issue for which the
6 opposing party will have the burden of proof at trial, as is the case here, the moving party need
7 only point out "that there is an absence of evidence to support the nonmoving party's case." Id.
8 at 325.

9    Once the moving party meets its initial burden, the nonmoving party must go beyond the
10 pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a
11 genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over
12 material facts and "factual disputes that are irrelevant or unnecessary will not be counted."
13 Liberty Lobby, Inc., 477 U.S. at 248. It is not the task of the court to scour the record in search
14 of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The
15 nonmoving party has the burden of identifying, with reasonable particularity, the evidence that
16 precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the
17 moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

18 B.   Excessive Force

19    Plaintiff claims that defendants yelled out contradictory commands just as he was
20 flushing the toilet. Before he had an opportunity to comply, plaintiff states that defendants
21 began to use the pepper spray on him, exhausting four to six cannisters in an effort to assault and
22 punish him.

23    The treatment a prisoner receives in prison and the conditions under which he is confined
24 are subject to scrutiny under the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 31
25 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes
26 cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475
27 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted). Whenever
28 prison officials stand accused of using excessive force in violation of the Eighth Amendment, the

core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Robins v. Meecham, 60 F.3d 1436, 1439-41 (9th Cir. 1995).

In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; LeMaire, 12 F.3d at 1454; see also Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation); see, e.g., Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (pepper-spraying fighting inmates a second time after hearing coughing and gagging from prior spray was not malicious and sadistic for purpose of causing harm, where initial shot of spray had been blocked by inmates' bodies).

In order to establish excessive force, the plaintiff needs to meet a threshold of evidence. Where evidence of excessive force is "woefully sparse," the plaintiff fails to raise a material issue of fact regarding an excessive force claim. Henderson v. City of Simi Valley, 305 F.3d 1052, 1061 (9th Cir. 2002) (affirming summary judgment on excessive force claim where plaintiff swung her feet in the air while being led by officers who gripped her arms to prevent her from falling). Additionally, the failure to deny allegations of non-cooperation that would justify increased force can support a grant of summary judgment against the plaintiff. Arpin v. Santa Clara Valley Transportation Authority, 261 F.3d 912, 922 (9th Cir. 2001).

In the instant matter, to determine whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, the court applies the Hudson factors. The first factor - the need for the application of force and the amount of force used - weighs in favor of defendants. Plaintiff concedes that defendants believed he had flushed something down the toilet, and that he did not follow defendants' commands because they were contradictory. (Complaint at 3A; Ex. A at 4.) These facts presented a need for the application of force, and the use of pepper spray to restore order. While

1  plaintiff may have tried to comply with the orders to "prone out," he does not dispute that he
2  continued to retrieve items and throw them into the toilet even after being pepper sprayed the
3  first time.  Further, although Flores appears to have complied with the orders initially, he got up
4  and threw an unidentified liquid at one of the defendants, which resulted in more pepper spray to
5  restore order.  This tense, threatening atmosphere, provided the need for force, and the amount of
6  force appears to have been narrowed to fit the need.  Specifically, defendants used pepper spray
7  and handcuffing to remove the inmates - reasonable choices for imposing order.  Also, there are
8  no allegations of gratuitous violence, such as throwing persons to the floor or punches being
9  thrown. As to the second factor - the extent of any injury inflicted - plaintiff speaks little of any
10 injuries, pain or discomfort, and none that have caused permanent or lasting pain or damage.

11     As to the third factor, the undisputed facts support a conclusion that defendants perceived
12 a reasonable threat. As noted above, it is undisputed that there had been several recent gang-
13 related violence, which resulted in defendants' conducting random searches of cells, and
14 defendants believed plaintiff was attempting to dispose of gang-related contraband.  As to the
15 fourth factor, the efforts, if any, made to temper the severity of a forceful response, the court
16 concludes that this weighs in favor of defendants.  It is undisputed that inmates were repeatedly
17 instructed to prone out, instructions that were ignored or not complied with, and, at least in terms
18 of Flores, flat out rejected when he threw the liquid at one of the defendants.

19     On these undisputed facts, read in the light most favorable to the nonmoving party, the
20 court concludes plaintiff has not shown evidence that precludes summary judgment on his
21 excessive force claim.  Accordingly, defendants' motion for summary judgment on the excessive
22 force claim is GRANTED.

23 C.    Deliberate Indifference

24     Plaintiff claims that he was denied "any form of decontamination;" was not given
25 decontaminated clothing until "hours later;" and was denied water, medical aid, and his inhaler.
26 (Complaint at 3C.)

27     Deliberate indifference to serious medical needs violates the Eighth Amendment's
28 proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104

(1976). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (citing Estelle, 429 U.S. at 104). Examples of indications that a prisoner has a "serious" need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities or the existence of chronic and substantial pain. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id.

In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060. A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, however. Nor must plaintiffs demonstrate that the defendant's actions were egregious. Id. at 1061 (citing Hudson, 503 U.S. at 7-10) (rejecting "significant injury" requirement and noting that Constitution is violated "whether or not significant injury is evident")). Nevertheless, the existence of serious harm tends to support an inmate's deliberate indifference claims. Jett v. Penner, 439 F3d 1091, 1096 (9th Cir. 2006) (citing McGuckin, 974 F.2d at 1060).

Reading the facts of the instant matter in the light most favorable to the nonmoving party, plaintiff has not shown evidence that precludes summary judgment. Even assuming that the effects of pepper spray result in a "serious medical need," see Clement, 298 F.3d at 904, plaintiff fails to provide any evidence that defendants possessed the requisite state of mind for deliberate indifference. Plaintiff does not allege that he requested decontamination or complained of any

1  physical injury as a result of the pepper spray, or that the defendants ignored his pleas for help.
2  Even assuming that he did request assistance and defendants did not assist him, it does not
3  establish that defendants acted with deliberate indifference.  A demonstration that defendants
4  failed to respond to plaintiff's requests does not alone show that they deliberately ignored those
5  requests.  Likewise, the comments allegedly made by Gross, regarding her disbelief that plaintiff
6  needed an inhaler because he was able to articulate that request, do not support an inference of
7  deliberate indifference because they do not evince knowledge on behalf of defendants that
8  plaintiff faced a serious risk of harm from the pepper spray.

9  　　　　While physical harm is not always necessary to establish a constitutional violation,
10 plaintiff has presented no evidence that defendants' behavior caused any actual injury,
11 suggesting that it would have been reasonable for defendants to believe that plaintiff did not face
12 any risk of serious injury.  See McGuckin, 974 F.2d at 1060-1061.  Plaintiff was able to be seen
13 by medical staff within a half hour of his being pepper sprayed and his only complaint in the
14 medical report was of a "burning in genital area."  (Decl. Lewis at OAG 017.)  Plaintiff has not
15 presented evidence to dispute defendants' contention that any discomfort was only a de minimis
16 injury, typical of that temporary discomfort caused by pepper spray.  The fact that defendants
17 took plaintiff to decontamination and the medical clinic immediately after they were able to cuff
18 him, indicates that defendants were in fact aware of the conditions plaintiff faced, and took steps
19 to prevent unnecessary injury and pain.  The deprivation of plaintiff's inhaler does not rise to the
20 level of deliberate indifference.  Plaintiff does not allege that he needed it, or that without it, he
21 was injured or suffered unnecessary pain.  In sum, plaintiff provides no evidence to infer that
22 defendants knew that he faced a substantial risk of serious harm and disregarded that risk by
23 failing to take reasonable steps to abate it.  Farmer, 511 U.S. at 837.  Accordingly, defendants'
24 motion for summary judgment as to his claim of deliberate indifference is GRANTED.
25 D.       Defendants Ponder and Evans
26       Plaintiff sues Ponder and Evans for failure to supervise and prohibit these types of
27 incidents, which go on "unchecked for more than two years with over one hundred of these types
28 of attacks."  A supervisor may be liable under § 1983 upon a showing of (1) personal

involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." Redman, 942 F.2d at 1447 (internal quotation marks and citations omitted). "It has long been clearly established that '[s]upervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" Preschooler II v. Davis, 479 F.3d 1175, 1183 (9th Cir. 2007) (citations omitted).

Plaintiff has not alleged sufficient facts to state a claim against the supervisory defendants. Plaintiff has failed to allege facts showing that they personally participated in or directed the alleged constitutional violations by their subordinates, or that they knew of the violations and failed to act to prevent them. See Taylor, 880 F.2d at 1045. The simple fact that Ponder and Evans are supervisors does not by itself suffice because only those individual officials who actually engage in unlawful conduct can be held liable. See Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). Thus, defendants' motion to dismiss the claims against Ponder and Evans is GRANTED.

E.  Unserved Defendants

Because the court is granting summary judgment in favor of defendants as to both claims, the court sua sponte grants judgment in favor of the unserved defendants as well. See Abagninin v. AMVAC Chemical Corp., 545 F.3d 733, 742 (9th Cir. 2008) (holding district court properly granted motion for judgment on the pleadings as to unserved defendants where such defendants were in a position similar to served defendants against whom claim for relief could not be

stated); Columbia Steel Fabricators v. Ahlstrom Recovery, 44 F.3d 800, 802-03 (9th Cir. 1995) (affirming grant of summary judgment in favor of nonappearing defendant where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant).

## CONCLUSION

The court concludes that plaintiff has failed to raise a genuine issue of material fact as to his allegations of excessive force and deliberate indifference, and that defendants are entitled to judgment as a matter of law. Accordingly, defendants' motion for summary judgment is GRANTED.[2]  Defendant's motion to dismiss is GRANTED. The clerk shall terminate all pending motions, enter judgment for the defendants, and close the file.

IT IS SO ORDERED.

DATED:  1/25/11

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

---

[2] Because the court grants defendants' motion for summary judgment, it is unnecessary to reach the issue of qualified immunity.

Order Granting Defendants' Motion for Summary Judgment; Granting Motion to Dismiss
P:\PRO-SE\SJ.Rmw\CR.08\Roldan898msjgrant.wpd    10